May it please the Court, Gail Ivins appearing on behalf of Appellant Barbara Rodriguez. Your Honors, today I would like to discuss the language in the United States Sentencing Guidelines 7B1.3d, which provides that the restitution fine, community confinement, etc., previously imposed in connection with the sentence for which revocation is ordered can be converted. And Judge Wright in the Court below relied on that language in imposing the consecutive six-month term on Ms. Rodriguez for a total term of imprisonment of 16 months. The guidelines for her Grade C violation, Criminal History 2, were four to ten months. He imposed ten months at the top of the range and then added this additional six months. In this case, Ms. Rodriguez had been originally convicted of providing contraband drugs to her husband in a federal prison. She was convicted in Arizona. Her supervision was transferred out to California. She was assigned to the calendar of Judge Wright. She violated. He then imposed. He revoked her supervised release. And then he imposed a new sentence. It's our position that the sentence referred to is that sentence that was imposed in 2008. And in that sentence, the judge did actually require that she get some drug treatment and reside at a program, which she successfully did for six months. And in connection with that, she completed her community confinement. After that, when she was back on supervised release, she did sign a contract and voluntarily became a member of the inaugural STAR program class. In connection with that, she was attending weekly court sessions, meeting with the program advisors, meeting with the probation officer, coming to the meetings with the public defender and the assistant U.S. attorney, and then, you know, ran into trouble, as was the issue in this case. And as a STAR program sanction was given specific requirements, including reside at a resident, you know, reentry center for up to 180 months. You know, counsel, the difficulty with your argument is that there was no objection below. So now review as conceded by the appellant is now for plain error. Let's say that we accept your argument that there's some or let's say we find that there's some ambiguity in the language of the guidelines as to what in connection with the sentence for which the revocation and a new sentence being imposed. It's hard to find that the error was so obvious that the judge was wrong, isn't it? Well, I guess the question is whether it's ambiguous or whether it's plain. My position would be that the sentence imposed for, you know, for which this revocation is happening, the only one it can be is the one that Judge Wright imposed in 2008. Why wouldn't it be? Why wouldn't even the voluntary program term be connected? The word connected in law is used. It can be very broad. I'm not saying that I agree that that is the best reading, but why wouldn't a judge look at it and say, well, you know, if I hadn't have sentenced them originally to do this, I would have never done this. So it's connected to, it's associated with. Although you may have the best reading, why would it be plain? You know, the court, the lawyers below and the judge below, there was no, it's not just that it's reviewed for plain error, but my guess is you had a pretty competent defense lawyer and he looked at it, or she looked at it, I don't know if it was you, and it wasn't plain to them. Well, Your Honor, actually there was a motion for reconsideration filed by Myra Sun, who was the deputy federal public defender who appeared at the time, and she actually did make that argument in the motion for reconsideration. And the judge declined to rule on that on the basis that he no longer had jurisdiction because the appeal was pending. And I think that the, I think that's right. I mean, we concede that the review in this Court is based on plain error. The additional information that is addressed in the opening brief to support the argument about how we interpret a STAR program sanction has to do with what are the procedures. Right? I mean, it's the Is the STAR program an alternative to the supervised release? It is a voluntary contractual arrangement where you agree to be supervised on your supervised release by the STAR program probation officer. The point is this is not just a community program that anybody can get into. That is correct. Right? So somebody has to be under some kind of court order in order to be referred to the STAR program. What you have to be is you have to be on supervised release. You have to meet certain requirements so that you are recommended to the program. You then have to be accepted into the program. After you're accepted into the program, which is much more onerous on the participant than traditional supervised release, then you sign this very detailed contract that sets out basically your agreement to give up your due process rights, an agreement to give up all sorts of rights, including, importantly, Your Honor, the right to when you are faced with a violation within the program. And that's what happened in this case. The only thing you can do is contest it for truthfulness. I either did it or I didn't. So if you don't say I didn't do it, no one in the public defender who is your representative sort of in the program cannot then argue, but, Your Honor, that's, that's, I need to mitigate that. That's too onerous. Supervised release is part of the sentence or not part of the sentence? Supervised release is part of the original sentence. That's where the connection is. That's my. Well, my position would be it was the original 2008 sentence. It was in connection with that sentence. Right. But she can't, she can't be referred to the STAR Program unless she's on supervised release. That's correct. So the STAR Program is sort of an alternative to things that we would typically do on supervised release. And if you violate the terms of your ordinary supervised release, you can be sent back to prison. Yes. So why isn't this then in connection with supervised release, which is part of the original sentence? Well, the original sentence included the order that she do the six months at Redgate, which she did. Then she was contractually agreed to have more onerous conditions and to give up her due process rights in large part and be part of this collaborative program to help her address her substance abuse. And so the program violation was in connection with the contract. So what you're saying, if she would have violated the supervised release and she'd got four months for violation of the supervised release and there would have been ten months left, she could have got another ten months as an extension of what was left on her supervised release. But there would have been a hearing involved in that. If at the original time that they ordered the RSC placement, basically for three reasons from, I mean, one of the problems with reviewing these kinds of cases, obviously, is that not all of the proceedings are transcribed. Right. It's an informal process. But the records that we have, including what the probation officer said in her violation, was that there were three reasons why they wanted her placed in the RRC. One was that she was pending homelessness. She was about to be homeless. Two was that she had lied about going to school. And three was that she had relapsed. And so they wanted to place her there to address her, you know, where her living arrangement was, which would allow her to go to school and get the treatment. And so this was not imposed as the traditional kind of you're being punished sanction that would have happened and would have been fully litigated if it had been a traditional supervised release setting. And she gave up the right to do that kind of opposition and to have that kind of full, fair, and developed hearing when she signed the contract. And so I think the Court needs to carefully think about how Starr is different from traditional supervision. Well, let me ask you, in the scenario that I laid out, am I correct that let's say she wasn't on the Starr program. Right. And let's say she had 12 months left on her supervised release. Right. The judge could have given her a certain period of time for a violation of the supervised release and then tacked on the amount of time left on her supervised release to that. Yes, Your Honor. All right. So what I'm saying, is she getting a benefit? Would people get a benefit by actually agreeing to the Starr program and then not showing up like she did? No. And then there's no tack on? Or would there be a tack on but with a hearing, with a full hearing of what was left on her supervised release period? If I understand the Court's question, participating in the Starr program actually was, even if she had successfully completed everything, would have been of limited benefit to her because the only value to her, other than helping her address her substance abuse issue, I mean, that is the purpose. You wouldn't want someone to go into the Starr program. The value to her would have been the potential for the reduction of her regular supervised release term of up to one year. But she had so little supervised release left on her original supervised release term, that even successful completion would not have resulted in her, you know, taking it. I know. But any time you have a small amount of period of time, you could just say, okay, I want in it, not show up, and then you can't have that other time. No. I mean, she gets no credit for the time that she spent on supervised release, whether it's in Starr or not on Starr. The only credit she got was for the 70-day sentence that Judge Wright had imposed in the 2008 sentencing. Okay. Thank you. I'm going to see that I am almost done with my time. You're actually over your time. But I'm over my time. But I will afford you a minute for rebuttal. Thank you very much, Your Honor. Thank you, Ms. Ivins. Mr. Wolff? Good morning, Your Honors. I'm an assistant United States attorney. I've been assigned to the Starr program since it began. And I think that I agree with the defendant that an understanding of how Starr operates is important to deciding the issues here. But I think it cuts somewhat differently than defendants suggest. A defendant in Starr meets with the judge, with the public defender, with the probation office, and with an assistant United States attorney every week in Judge Wright's courtroom. The participants sit in the jury box, and the team members sit around one of the council tables near the jury box so that the judge speaks with the defendant every week, and the defendant speaks with the judge every week. Prior to that meeting, there's a nonpublic session in which all the team members but not the participants sit and say, for instance, how did Ms. Rodriguez do this week? So the important point about this, I think, is that Ms. Rodriguez's consent is not a blanket consent offered at the beginning of a 10-month period that's irrevocable forever. It's a consent that she has to renew every week and that she has an opportunity to revoke every week. If she dislikes the process, if she even dislikes the sanction, she can say, I withdraw, and she's out. Judge Wright has two rules for the program. He says, no new crimes, and you have to show up. We can't do you any good if you don't show up. And he also says, you can withdraw at any time. Ms. Rodriguez could have said, I don't like the 180 months at the RRC. I withdraw, and she would have been out of the program. She could not have been compelled to serve the 180 days. She would have simply gone back to regular supervision. Star is a supplement to the regular supervision, as Your Honor pointed out, and if she dislikes the supplement, she can return to regular supervision when there's no question that she would have all the rights of the ordinary supervisor. Is there any indication, whether in the text of the Star contract or in any of the discussions that Judge Wright or advisements that Judge Wright has with the defendants and counsel, that contemplates a period of residential treatment if unsuccessful would then be converted day for day into imprisonment? I don't remember ever having that addressed. Given the goals of the Star program, do you think that those goals would be substantially undermined if the defendants know that, let's say, a year residential program could then be converted to a year of imprisonment? Would that be problematic? I'm not sure about that. One of the ways in which Star, it is, one of its weaknesses is that there's not a very big hammer, and there's not a very big reward. That is, defendant at most can get a year off supervision, which isn't much incentive. And the strength of that point is that people only come into the program who want to. Ms. Ivins was ---- Counsel, if in fact a person can leave it at any time they want, then it sounds like it's not mandatory. Oh, it's absolutely not. It's absolutely. And if it's not mandatory, why should she get punishment for something that she's not required to do? Your Honor. I mean, basically, she opted out. She never showed up. She never ---- she didn't show up. She didn't cross the finish line. She never got to the race. She never started a race, sounds like. They said she was going to do it, and she was gone, right? Yes, Your Honor. But you're saying she did because she would come in every week. I get the impression that when she got on the Star program, she was gone. No, Your Honor. She began Star in January of 2010, and she participated all the way into November, November 23rd or 24th. Judge Wright ordered her to go to the residential reentry center for up to 180 days and continue treatment because she just relapsed. Okay. So let's say after five months she just tells the judge, I'm leaving. I'm not going to do this. He can't do anything to her. He can't give her ---- he can't extend any time to her. That's exactly right. She would go back. So if she doesn't want to do it, she can't get time. But if she doesn't say she doesn't want to do it, she gets time. Your Honor, I'd suggest that that's not precisely right. If she says, I don't want to do it. Then she gets back in the regular pool. She goes back to regular supervision. And the agreement, not by law but by agreement of the agencies, is that a violation addressed during Star will not be pressed by the government or the probation office as a violation of supervised release, so that people know they use methamphetamine. If they keep coming back and the Star program addresses the relapse, it will be dealt with there. So she gets a benefit instead of being revoked. Instead of being revoked, they help her. Yes. If she says, no, I don't want to do that, she goes back to regular supervision. In this case, it was, by happenstance, Judge Wright again. But it could have been any other judge in the district court. It could have been Your Honor prior to your elevation. And then the relapse, which is also a violation of the supervised release condition, has not been addressed in Star, and the probation office can make it the subject of a petition. So that it really is a matter of whether the defendant wants to suck it up, press on, fight the addiction, which is the sole reason for the existence of the Star program. If they get tired of it, if they just think it's too much trouble, because it's very demanding, coming to sit every week in front of the judge, in front of the public defenders, in front of me, in front of the probation office, to say, how have you done this week? It's a very commendable program, but I'm trying to figure how it works, how that affects the legal issue in this case, which is this connection problem that we have in the statute. I mean, it can be the most fantastic program in the world, but if it's — if it doesn't fit the connection requirement, then it's harmful. Your Honor, it seemed to me that — well, I'd make two points about that. One is that if none of us are completely positive what the meaning is, then it's not a plain error. That's the obvious argument. But the other is that if the defendant is obliged to do things, either within Star as a supplement to supervised release, or an ordinary supervised release, it has to be because it's in connection with a sentence, because there can't be compulsion without the sentence. And I agree with the defense counsel that the sentence here, in connection with which the supervised release or the RRC placement was made, was Judge Wright's 2008, 32-month supervised release sentence. And the defendant opted in to Star. She could have opted out at any time by saying, I want out. And I would liken it as a legal matter to consent to a Fourth Amendment search. It's revocable at any time. You've indicated that you're very familiar with Star, and obviously you are. Does this happen with some frequency, that someone is tacked on this time? Or is this — do we not have any case law because this hasn't happened before? In other words, have the judges in this district just gone ahead and tacked it on and figured it must be fine, it gets connected, no one's ever complained about it? I do not know of another instance like this, because absconding is uncommon in the Star program, partly because Judge Wright makes such a point out of, we can't help you if you won't come back. But it does happen. In this same year, in 2010, we had someone leave, like Ms. Rodriguez. He was a heroin addict, and he died of an overdose four months later. I mean, it's one of the reasons that the judge is so repetitive about, you've got to come back. And I do not know of another instance in Star in this district. Were you, Mr. Wolfe, the AUSA assigned to this particular defendant's Star team? I'm assigned to every defendant's. There were two AUSAs who were assigned to the program, and we attend every week. One of us or both of us. Was the six-month determination that was imposed in this case due in part to trying to address her homelessness problems? I would think at least in part. The probation office proposed 180 days, and the two important things to bear in mind about it are that it's up to 180 days, so that what will happen typically is when the defendant has been in RRC for a month, she'll be back at her fourth week's meeting, and she or the public defender or both of them will say, Your Honor, I'm doing really well, and I think that I could be ready to go back and live with my mother or stay with my sister. And if that's the case, if people are persuaded, then Judge Wright would say, Okay, it's only been 30 days, but you're doing well. Let's try it out. So that the 180 days is a sentence in some sense because she can be required to do it for up to 180 days, but it's also plainly to help because if it serves its purpose, and she would be better off out living with her family or living in a sober living if she's employed, then she and the public defender can raise it every week and say, Your Honor, we'd be better off outside, and the team would agree. Unless Your Honors have a question, the government is going to submit. Okay. Thank you. Thank you. Sidons? Thank you, Your Honor. I believe that in the sealed excerpt of record in the probation officer's recommendation, she references three factors for the RRC placement, her looming homelessness, that she was dishonest, and her recent relapse. And I would say that if this were a traditional supervised release revocation rather than within the STAR program, it wouldn't have been appropriate for the court to consider treating her substance abuse, dealing with her homelessness as factors to increase the amount of time that he otherwise would order just as some type of, you violated and now you're being sanctioned, you know, within a supervised release context. I mean, this has to be looked at. I mean, we would have been able to appeal that. If this had been in a straight, if she had opted out of the program entirely and then been sentenced by Judge Wright in the initial order of the RRC, there would be a very separate and distinct appellate issue of, you gave her time that was more than necessary to address the purposes. But you would have had some options within the range, too. I mean, because of her repeated use of amphetamines and a danger to herself and society and those type of things that, I mean, we would just be changing the argument, but the amount of time would have still been available, wouldn't it? I'm talking about the imposition of the time in the RRC for purposes of addressing her homelessness and her dishonesty in order to help her in the STAR program have part-time employment, et cetera. How long of supervised release did she have before she entered the STAR program? How much time did she have remaining on supervised release? Do you know? She had less than a year. I think it was eight months, nine months. We can give you that exact answer. It was less than a year. Okay. So she had less than a year. But she entered the STAR program. Did she have more than six months? Yes. Okay. And if she had been on supervised release and had violated the terms of her release, she could have been sent back to prison for how long? Forget the STAR program. If she had been on supervised release, violated the terms of her release. Six months minus the 70 days that she had already served. So the 24-month max. So she could have gone two years, even though she only had eight months left on her supervised release. She could have gone up to two years. And she could have continued in STAR because one of the contractual terms is if you're doing well. So effectively what she got here, though, was another six months of prison time on top of the ten months because she violated the terms of STAR. But she could have gotten up to two years if she had been on supervised release and violated the terms of her supervised release. Right. And the question is whether if Judge Wright had, you know, if she had been ordered into the treatment facility in connection with traditional supervised release, the public defender would not have had her hands tied in being able to argue that the purposes that the judge was intending to put her into the program for were improper purposes in connection with traditional supervised release, and that they were mitigating facts and the issues with regard to her, the sexual abuse as a minor, and all of the other things that are addressed in the case at this point could have been raised at that time but weren't because of the contract. And so my position is still that this particular six-month provision was in connection with the contract and not in connection with the sentence, and that he couldn't have ordered it if this were traditional supervised release because it was for treatment purposes. And with that, unless the Court has further questions. Okay. Thank you. Thank both counsel for the argument. It was very helpful. United States v. Rodriguez is submitted. And the last case on the oral argument calendar is Figure 8, Holdings, LLC v. Dr. Jays, Incorporated.
judges: Benavides, Bybee, Nguyen